**COOLEY LLP**
WHITTY SOMVICHIAN (194463)
(wsomvichian@cooley.com)
REECE TREVOR (316685)
(rtrevor@cooley.com)
JINYOUNG LEE (359885)
(jinyounglee@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, CA 94111-4004
Telephone:    (415) 693-2000
Facsimile:    (415) 693-2222

Attorneys for Plaintiff
GOOGLE LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES AND DECLARATORY & INJUNCTIVE RELIEF** |
| v. | **JURY TRIAL DEMANDED** |
| YANIV ASAYAG, an individual; and DOES 1–20, | |
| Defendants. | |

Plaintiff Google LLC ("Google"), by and through its attorneys of record, brings this action against Defendants Yaniv Asayag and Does 1–20 (together, "Defendants") for (1) breach of contract; and (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*. Google alleges as follows:

1.     Over the past two years, Mr. Asayag has abused Google services to create fake online listings for businesses that do not exist and to bolster them with fake reviews from people who do not exist. Mr. Asayag has also engaged in an ongoing fraudulent "lead-generation" scheme by selling to third parties information about consumers lured in by his fake business listings.

2.     Google provides (among other things) detailed public listings of local businesses on Google services like Maps and Search with accompanying ratings and reviews submitted by Google users. The authenticity of these listings and reviews is essential to businesses, their customers, and Google. Online ratings and reviews, such as those found on Google Maps, play a crucial role in influencing the decisions of numerous potential customers when they are searching for businesses to engage with. Accordingly, these ratings and reviews must offer authentic information about the business's products and services based on users' real experiences. Google's policies and its contracts with individuals who post reviews or edit business listings make these requirements of authenticity clear.

3.     Importantly, the authenticity of these ratings and reviews is critical in ensuring the privacy and safety of Google users who may consult such information when soliciting businesses for goods and services. Consumers who contact a business based on its Google listing may entrust their personal information to the business, including their names, phone numbers, addresses, access to their homes or property, and more. Purveyors of fake profiles and reviews on Google can exploit these innocent consumers' trust and risk their safety by selling their personal information to third parties as leads, thereby establishing a connection between the consumer and a third party with whom the consumer never intended to engage or otherwise interact with. In many instances, these third parties will take advantage of these oblivious consumers to significantly upcharge or, in more extreme cases, out-and-out extort a consumer who is desperately seeking emergency or urgent services.

4.      For these reasons, Google employs numerous methods to prevent and remove fake or otherwise inappropriate reviews on Google Maps and Google Search. As part of these initiatives, Google has determined that Mr. Asayag, and other potential co-conspirators involved, are engaged in an ongoing pattern of fraudulent conduct by selling and posting fake reviews for businesses listed on Google Maps and Google Search, in violation of the Google's Terms of Service and California law.

5.      Defendants' conduct harms consumers by giving them fake information about businesses and obscuring genuine reviews. Internet users look to Google Maps and other Google services to compare businesses and decide which to engage. When a business's reviews do not reflect consumers' real experiences with that business, it provides members of the public with false and inauthentic information about the quality of that business's goods or services. Such fake reviews also crowd out reports of consumers' real interactions with that business, creating a misleading picture about the business and driving out potential customers. Defendants' conduct harms legitimate businesses by enabling unscrupulous competitors who purchase fake reviews to unfairly siphon customers away.

6.      Defendants' conduct poses a risk of irreparable injury to Google by undermining Google's credibility with its users and by making Google Maps and Google Search less attractive for consumers to use to seek information about local businesses.  Defendants' conduct also discourages businesses from continuing to rely on Google services to publicize their goods and services to potential consumers.

7.      Therefore, Google brings this action to put an end to Defendants' fraudulent conduct and to enjoin Defendants from continuing the ongoing harm against Google, Google users, and local businesses.

## **PARTIES**

8.      Google LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

9.      Defendant Yaniv Asayag is an individual who resides in Maryland. Mr. Asayag

operates at least two businesses based in Maryland and registered with the Secretary of State of Maryland: Eagle Locksmith and Eagle Services LLC, both based in Beltsville, Maryland. The Maryland Secretary of State lists Yaniv Asayag as the "Resident Agent" of Eagle Services LLC. Upon information and belief, Mr. Asayag also operates a third business in Maryland, Eagle Air Duct Cleaning, which lists on its website the same business address as that associated with Eagle Services LLC: 10606 Baltimore Avenue, Beltsville, MD 20705.

10. Google does not know the true names and capacities of Mr. Asayag's co-conspirators sued as Does 1–20 (the "Doe Defendants") and therefore sues them under fictitious names. On information and belief, some or all of the Doe Defendants are individuals or entities that post fake reviews on Google services at the direction of Mr. Asayag. Google will amend this Complaint to allege the true names and capacities of these Doe Defendants if and when they are ascertained.

## **JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

11. This Court has diversity jurisdiction under 28 U.S.C. § 1332, as (1) the parties are citizens of different states, and (2) the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs, due to Google's expenses incurred to investigate Defendants' fraudulent conduct, breaches of contract, violations of the FTC regulations and the UCL, and to remedy users' confidence and trust in Google services.

12. This Court has personal jurisdiction over Defendants because each Defendant consented to the jurisdiction of the federal or state courts of Santa Clara County, California, by agreeing to Google's Terms of Service and the choice of venue provision therein, as discussed in more detail below.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including the harm that Defendants caused Google and other individuals and entities in this District. In addition, Defendants consented to venue in this District by agreeing to Google's Terms of Service and the choice of venue provision therein, as discussed in more detail below.

14. This action is properly assigned to the San Jose Division of this District under Civil

Local Rule 3-2(c) because Google is headquartered in Santa Clara County, which is served by the San Jose Division.

### FACTUAL BACKGROUND

### GOOGLE MAPS AND GOOGLE SEARCH REVIEWS

15.    Google is a well-known provider of an Internet search engine and other online services. One such service is Google Maps, which is free to use and has over one billion users. Google Maps displays not only traditional map features such as streets and topography, but also clickable search results in the form of profile pages detailing information about businesses, service providers, and other places of interest. These pages, known as "local listings," span an enormous variety of businesses and professionals around the United States and the world. These include, just to name a few, restaurants, car mechanics, accountants, museums, dentists, hair salons, airports, law firms, government agencies, retail stores, and amusement parks. Local listings also appear in other Google services, like Google Search. New local listings may be created by businesses themselves, automatically created by Google, or suggested by members of the public.

16.    Any business can sign up for a Business Profile, a Google service that offers it a suite of tools to manage the business's local listing on Google. To create a new Business Profile or claim an existing Business Profile, the user must accept both Google's Terms of Service ("TOS")[1] and the Google Business Profile Additional Terms of Service for Business Entities ("Google Business Profile TOS")[2].

17.    Users can browse Google Maps to explore local listings in a given area and run searches to find a particular business or a type of business in that area. These listings display certain information about a business, such as its street address, hours, and website. For example, the local listing for Googleplex, Google's campus in Mountain View, California, appears below:

---

[1] *See* Google Terms of Service, https://policies.google.com/terms?hl=en-US (effective May 22, 2024).
[2] *See* All Business Profile Policies & Guidelines, https://support.google.com/business/answer/7667250 (last updated July 31, 2024).



18.     Importantly for this case, local listings also feature user-created ratings and reviews of the business associated with each listing. To be useful to consumers, these reviews must be based on authentic experiences with the business.

19.     Anyone browsing the Internet can view local listings and reviews, but to post a review, a user must create and log into a free Google account. A signed-in Google user may provide ratings and award a business between one and five stars and post a narrative description of their experience with the business. Once a user creates a review, that review is visible on the business's listing to all, along with the user's name and profile picture. The local listing also displays the business's average star review on its main local listing page. In the example above, for instance,

Googleplex's listing reflects 9,711 reviews, averaging 4.2 out of 5 stars.

20.     Particularly because these averaged review scores often appear on Google Maps and in other Google services before a user even clicks on the associated local listing, they are an important tool for consumers when researching the best-regarded business of a particular type in a particular area. Consider, for example, the below search in Google Maps for "San Francisco landmarks," which illustrates how a user might compare different landmarks in San Francisco based on the star ratings in their local listings:



21.     Google is a critical resource for countless consumers searching for businesses and services. Consumers consider the ratings and reviews to decide from which businesses to purchase goods or services and to which businesses to provide their personal information in order to secure those goods or services. Therefore, it is important that reviews about a business displayed on Google are based on real experiences, since consumers depend on truthful information to make informed decisions, including with whom to share their personal information.

22.    In particular, reviews on Google Maps are critically important to users, businesses, and Google. Authentic local listings and reviews help users make informed decisions about which businesses to patronize (or not). The reviews and engagement provided by real-life patrons of the business provide useful information to potential consumers. Businesses also benefit from truthful ratings and reviews. They stand to gain when happy customers leave positive reviews that direct more customers their way, whereas businesses receiving negative reviews for subpar goods or services are motivated to improve. Likewise, Google benefits from maintaining a helpful and credible service known for its authentic and trustworthy information.

23.    By contrast, when local listings feature fake ratings and reviews, everyone involved suffers. Users are left with inauthentic information. Honest businesses lose potential customers and revenue because they are competing against businesses that buy fake reviews, or to fake businesses. Google also loses credibility and goodwill among misled users and frustrated businesses, making both less likely to utilize Google services in the future.

## DEFENDANTS' FRAUDULENT LEAD GENERATION SCHEME

24.    Defendants have engaged in a fraudulent lead generation scheme by creating fake Business Profiles or by editing pre-existing Business Profiles. Defendants often target locksmiths and other service providers that typically serve an immediate need, *e.g.*, HVAC cleaners and towing companies. Customers seeking these services are particularly vulnerable to being harmed by fake profiles and reviews, as bad actors take advantage of the urgency of the customer's need to make a profit. For example, it is well-documented that fraud and abuse among locksmith businesses is prevalent, with numerous consumer complaints being filed about referrals to unknown locksmiths by fraudulent "lead generators," then getting overcharged and being subjected to other bait-and-switch tactics, and in extreme cases, false imprisonment or outright extortion.[3]

25.    Defendants' lead generation scheme operates as follows: Defendants either create a

---

[3] Indeed, the prevalence of fake locksmith scams has led to the Better Business Bureau and others issuing express warnings to consumers. *See* Better Business Bureau, *BBB Scam Alert: Locked out? Don't fall for a locksmith scam*, BETTER BUSINESS BUREAU (July 24, 2020), https://www.bbb.org/article/news-releases/22797-bbb-scam-alert-locked-out-dont-fall-for-a-locksmith-cons; David Lazarus, *Column: How a locksmith's quoted price of $60 soared to a final charge of $457*, L.A. TIMES (Dec. 17, 2019), https://www.latimes.com/business/story/2019-12-17/column-locksmith-scam/.

fake Business Listing or takes control of a pre-existing, unclaimed Business Listing, and then modify it to correspond to a generically-named business that corresponds to a consumer's urgent need (like a locksmith).

26.    Take, for example, "MS Locksmith," a business listing associated with Mr. Asayag. The listing was originally created by a business called "ByDenis Cleaner." The creator of the listing added a newly created website to bolster the listing. The listing was then verified by sending a verification email to an email address that had been created with a matching domain name, *i.e.*, @lapswashcar.com.

27.    Less than a month later, Mr. Asayag began changing the listing in the following ways:

a.    The name of the business was changed from "ByDenis Cleaner" to "MS Locksmith";

b.    The associated website was changed from www.lapswashcar.com to www.mslocksmithva.com;

c.    The previous physical address was deleted and a new physical address provided; and

d.    The previous hours of operation associated with the listing were changed from "Temporarily Closed" to "Not Closed."

e.    After these edits had been made to change the listing from that of a cleaner to an entirely different locksmith business, ownership of the listing was transferred to another account, which upon information and belief is controlled and/or operated by Mr. Asayag and is associated with multiple accounts with the same modus operandi—that is, creating locksmith businesses, including by editing existing listings.

28.    The number of times a particular user has edited Business Profiles and/or local listings can be indicative of a lead generation or bait-and-switch scam. From early 2023 to May 2024, Mr. Asayag edited listings at least **1,034 times**, covering listings for at least **149** different purported businesses. Most of these listings claimed to be located in the United States, with the largest concentration in the Washington, D.C. metropolitan area, though Mr. Asayag has edited

Business Profiles in Turkey as well. The staggering number of Mr. Asayag's edits to profiles—particularly for businesses located in the same small geographic area—is further evidence of a lead generation scheme.

29.    Oftentimes, these fraudulent Business Profiles will link to addresses that do not correspond to the listed business (or any business at all). For example, Mr. Asayag's "Pristige Garage Doors [*sic*]" claimed to be located at the same address as a National Guard armory.[4] And another listing he edited for "Magic Locksmith" purports to share its address with a Best Buy.[5]

30.    These fraudulent profiles lure in unsuspecting consumers. Google users searching for businesses that suit their needs on Search or Maps find these Business Profiles and their websites, and—likely relying on Defendants' fake reviews, addressed further below—call the phone numbers or submit online inquiries with their contact information.

31.    Mr. Asayag then sells information about these potential consumers as "leads" to real-world businesses that actually provide the services the consumers are seeking. The consumers believe that they are contacting a particular business that they have chosen based on its Business Profile, reviews, website, proximity to their location, or other features. But they end up being sent to a different business altogether—one they did not choose and by whom they did not consent to be contacted—and, troublingly, a business that may ultimately demand a much larger sum when they arrive onsite, claiming the work was more complicated than expected. This behavior misleads consumers and is likely to erode their trust in Business Profiles on Google as a reliable and safe way to find and contact local businesses.

32.    Mr. Asayag's scheme remains active and ongoing. Within the past several weeks, an account associated with him began editing an existing listing for a spa and massage business in Washington, D.C., "Skin Sanctuary Spa & Massage."  Mr. Asayag changed this listing to refer to a nonexistent water damage restoration business, "Coffee Capital Water Damage & Restoration." Mr. Asayag added a phone number with an area code for Seattle, Washington (a city that many likely consider a "coffee capital") and the website www.waterdamage-seattlewa.com. This website,

---

[4] 1137 Washington Street, Newton, MA 02465, USA.
[5] 3549 West Shore Drive, Holland, MI 49424, USA.

which remains operational at the time of this Complaint's filing, contains a generic template for "water damage repair quotes" that urges visitors to call the listed phone number or fill out an online form to "GET YOUR LOCAL ESTIMATE." Each step of Mr. Asayag's lead generation scheme played out as Google alleges above: he started with an existing business profile, converted it to refer to a nonexistent fake business, and tried to use that fake business's listing and website to generate leads he could sell to unknown third parties.



## **DEFENDANTS' FAKE REVIEW SCHEME**

33.     To further bolster these fake listings' illusions of legitimacy and credibility, Defendants cause fake reviews to be posted to their fraudulent Business Profiles and offer fake reviews for sale to other business owners.

34.     Mr. Asayag's procurement of fake reviews is evident from listings associated with his own businesses.

35.     The Business Profile for Mr. Asayag's own business, Eagle Locksmith in Maryland, displays five-star reviews from Google users "Maria Mendes," "Dennis Aguilar," and "Francisco Jesus" (among many others). All three users have also left positive reviews not only for another

business associated with Mr. Asayag, Eagle Air Duct Cleaning, but also for three other local listings purporting to provide similar services, located in different states: All Star Garage & Gates Repair (Spring Valley, California), GTA Door Repairs (Toronto, Canada), and Good Guys Locksmith (Fort Lauderdale, Florida).

36.    For example, "Maria Mendes," who left a glowing review for Eagle Locksmith also provided 5-star reviews for at least three other businesses—two providing the same services—that same month, even though each business is allegedly located in a different state. She also posted reviews for All Star Garage & Gates Repair and GTA Door Repairs in the same month, which suggests that "Maria" was having issues with garage doors and/or gates in both Spring Valley, California (where All Star Garage & Gates Repair is supposedly based) and Toronto, Canada (GTA Door Repairs).

Cooley LLP
Attorneys at Law
San Francisco

37.    "Dennis Aguilar's" reviews suggest that he had experiences with Eagle Air Duct Cleaning, Eagle Locksmith (both in Beltsville, Maryland), GTA Door Repairs (Toronto, Canada), and All Star Garage & Gates Repair (Spring Valley, California) in the same month, and that he was ***also*** able to receive services from a roofing company outside of London, England and a doctor's office in Kyiv, Ukraine in the midst of the ongoing Russia–Ukraine conflict. This implausible scenario suggests that "Dennis's" reviews are fraudulent.



38.    While these reviews were purportedly authored by consumers who visited the businesses associated with these Business Profiles, that is clearly not the case. Nearly all of the listings on which these reviews were posted had their name, website, or phone number created or modified by accounts associated with Mr. Asayag, as described above. Nearly all of the reviews

1    awarded five out of a potential five stars.

2        39.    On information and belief, Mr. Asayag sells similar fake review posting services to

3    his clients. In addition to obtaining reviews of his own fake businesses, Mr. Asayag claims that he

4    will, for a fee, arrange for Mr. Asayag, his agents, or other third parties (including some or all of

5    the Doe Defendants) to post fake positive reviews of their clients' real businesses. Google is

6    informed and believes, and based thereon alleges, that the persons who post these reviews did not

7    have any real experiences with the businesses in question.



21        40.    Mr. Asayag has publicly advertised these fake review services for years. For

22    example, in an August 2022 Facebook post in the "Israeli home improvement" Facebook group,

23    Mr. Asayag offers "5 star reviews" that "include quality content and reviews that don't fall and of

24    course quality that won't cause damage to your map"—in other words, he promises that he can

25    evade Google's efforts to stop fake reviews from appearing on local listings. Mr. Asayag invites

26    users to "contact me in private" and to pay him through "Zelle[,] Cash app[,] Venmo[, or] Crypto"

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT

1    to secure these services.[6]

2    41.    Mr. Asayag's advertising of fake reviews is explicit. Another Google search result

3    shows a since-deleted Facebook post from Mr. Asayag in an air duct cleaning Facebook group

4    instructing users to send him a direct message "for **Permanent google reviews**" which he claimed

5    he could post from "**many accounts with good names**," presumably referring to Google accounts

6    that Mr. Asayag asserted could evade Google's detection.



11    **DEFENDANTS' VIOLATIONS OF GOOGLE'S TERMS OF SERVICE**

12    42.    Google makes clear to all users that there are specific rules for user-contributed

13    content, such as reviews on Google Maps. Most importantly, in this case, Google's contract with

14    its users mandates that the reviews must be genuine and should accurately represent a user's real

15    experience with a business.

16    43.    When a user signs up for a Google account—a prerequisite for posting reviews on

17    Google Maps—he or she must expressly agree to the Google Terms of Service ("TOS").[7]

18    44.    The TOS governs a user's relationship with Google, permitting them to use

19    Google's services in exchange for following certain rules and guidelines.

20    45.    At all relevant times, the TOS has included California forum selection and choice

21    of law clauses. Specifically, the TOS provides that "California law will govern all disputes arising

22    out of or relating to these terms, service-specific additional terms, or any related services,

23    regardless of conflict of laws rules" and that such 'disputes will be resolved exclusively in the

24    federal or state courts of Santa Clara County, California, USA, and you and Google consent to

25    personal jurisdiction in those courts."

26    46.    At all relevant times, the TOS has incorporated by reference various "service-

---

[6] https://www.facebook.com/groups/1856033711349209; *see also* https://www.facebook.com/yaniv.asayag (August 17, 2022 post advertising same 5-star services).
[7] Terms of Service, https://policies.google.com/terms?hl=en-US (effective May 22, 2024).

specific additional terms" that apply to individual Google services, including Maps, such as the Maps User-Generated Content Policy.[8]

47.    At all relevant times, the Maps User-Generated Content Policy was designed "to help ensure that everyone viewing [user generated content] has a positive experience."  It provides that contributions must be "***based on real experiences and information***," and they prohibit "[d]eliberately fake content" and "incorrect content." These policies reflect that Google "work[s] hard to make sure content published by third-party contributors is useful and reflects the world [its] users explore."

48.    Defendants breached these terms by posting or inducing others (including without limitation some or all of the Doe Defendants) to post deliberately fake reviews on Google Maps.

49.    The Google Business Profile TOS also requires merchants to adhere to certain guidelines in representing their businesses on Google Business Profiles. It specifically provides that Google does not allow businesses to "[s]olicit or encourage the posting of content that does not represent a genuine experience."[9] Google also prohibits merchants from "[o]ffer[ing] incentives – such as payment, discounts, free goods and/or services – in exchange for posting any review or revision or removal of a negative review." Google Business Profile users who purchase Defendants' fake reviews violate this policy, since they both "[s]olicit" the fake reviews and offer "payment" for them.  These merchants therefore breach the TOS to which they agreed when they created the Google accounts necessary to use Google Business Profiles.

50.    The Google Business Profile TOS incorporates a set of service-specific Business Profile Policies & Guidelines,[10] which require that "[a]ll content added to a Business Profile must abide by Google's [p]rohibited and restricted content policies"[11] as set forth in the Maps User Generated Content Policy. Any Google Business Profile user who breaches the TOS by violating

---

[8] Maps User-Generated Content Policy, https://support.google.com/contributionpolicy/answer/7422880?hl=en.
[9] Prohibited & restricted content, Maps User-Generated Content Policy, https://support.google.com/contributionpolicy/answer/7400114?sjid=5644753585885991790-NC#zippy=%2Cfake-engagement.
[10] All Business Profile policies & guidelines, https://support.google.com/business/answer/7667250 (last updated July 31, 2024); *see also* https://support.google.com/business/answer/13762416?sjid=5644753585885991790-NC.
[11] Overview of Google Business Profile policies, https://support.google.com/business/answer/13762416?sjid=4505110269987471185-NA.

COMPLAINT

the Maps User-Generated Content Policy therefore necessarily breaches the Google Business Profile TOS.

51.    Google is informed and believes, and on that basis alleges, that Defendants know and knew during all relevant times that the TOS applies to the relationship between Google and users who post reviews and operate Google Business Profiles. Because Defendants' business involves posting reviews on Google and elsewhere, it follows that they must be aware that a user account is required to do so or to administer a Business Profile, and that one must accept the TOS to create such an account.

52.    Defendants breached the TOS by posting or inducing others (including without limitation some or all of the Doe Defendants) to post deliberately fake content, not based on real experiences and information, on Google services.

53.    Moreover, the Google Business Profile TOS provides that "lead generation agents or companies" may not use Business Profiles.[12] The Google Business Profile TOS mandates that users of Business Profiles "be upfront and honest about the information provided" and "not provide inaccurate or false information about your business or the services and products offered."[13] Business owners who use Business Profiles must also "accurately represent [their] business name . . . as used consistently on [their] storefront, website, stationery, and as known to customers."

54.    Defendants' business models and practices also violate all of these provisions of the Google Business Profile TOS.  Defendants create and modify dummy Business Profiles for businesses that do not actually exist and then use the information gained from these fraudulent listings to provide other businesses with leads in exchange for payment.  Due to Defendants' actions, Google is forced to expend substantial time and resources conducting investigations to identify and disable accounts, Business Profiles, and inauthentic or fraudulent reviews implicated in Defendants' scheme.

55.    On information and belief, by disrupting Business Profiles, Search, and Maps with false and misleading information, Defendants' conduct has undermined Google's credibility and

---

[12] Business eligibility and ownership guidelines, https://support.google.com/business/answer/13763036?hl=en.
[13] Guidelines for representing your business on Google, https://support.google.com/business/answer/3038177?hl=en.

caused some consumers and businesses to avoid using Google's mapping services, all to the detriment of Google and its business.

**COUNT I:  BREACH OF CONTRACT (FAKE REVIEWS)**

56.     Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

57.     To the extent Defendants themselves posted fake content on Google, Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS, as set forth above.

58.     Google fully performed its obligations under the TOS.

59.     Defendants breached their contractual obligations under the TOS and Google Business Profile TOS in a number of ways, including by posting on Google Maps deliberately fake content that was not based on real experiences. Defendants' posting of fake reviews constitutes a breach of the TOS and Google Business Profile TOS. Defendants' purchase of fake reviews, including for the purposes of fraudulently promoting Mr. Asayag's own businesses, also constitute a breach of the TOS and Google Business TOS.

60.     As set forth above, as a result of Defendants' breaches of the TOS and Google Business Profile TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate and remedy Defendants' breach and by undermining users' confidence and trust in Google services including Google Maps and Google Business Profiles.

**COUNT II:  BREACH OF CONTRACT (LEAD GENERATION SCHEME)**

61.     Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

62.     Defendants entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS and Google Business Profile TOS, as set forth above.

63.     Google fully performed its obligations under the TOS.

64.     Defendants breached their contractual obligations under the TOS by creating and modifying Business Profiles for businesses that do not exist, attaching phone numbers and physical

addresses to Business Profiles that are not associated with those businesses, and using Business Profiles to generate leads and selling said leads to third parties.

65.    As set forth above, as a result of Defendants' breaches of the TOS and Google Business Profile TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate and remedy Defendants' breach and by undermining users' confidence and trust in Google services including Google Maps and Google Business Profiles.

### COUNT III:  VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *et seq.*

66.    Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

67.    Defendants' sale and authorship of fake Google reviews is contrary to the Federal Trade Commission ("FTC")'s regulations governing the use of endorsements and testimonials. Those rules require that endorsements "reflect the honest opinions, findings, beliefs, or experience of the endorser" and prohibit "any express or implied representation that would be deceptive if made directly by the advertiser." 16 C.F.R. § 255.1(a). A separate FTC rule likewise prohibits businesses from "writ[ing], creat[ing], or sell[ing] a consumer review [or] consumer testimonial" that "materially misrepresents" that "the reviewer or testimonialist exists," "used or otherwise had experience with the product, service, or business that is the subject of the review or testimonial," or their "experience with the product, service, or business that is the subject of the review or testimonial." 16 C.F.R. § 465.2(a). Nor may businesses "purchase a consumer review" or "disseminate or cause the dissemination of a consumer testimonial" that misrepresents such information. 16 C.F.R. § 465.2(b). Defendants violate these provisions by posting or soliciting others to post reviews of businesses they have never patronized and whose products and services they have never experienced, all while falsely and deceptively implying to readers that they have.

68.    Violation of FTC regulations is an unlawful business practice under California's UCL, Cal. Civ. Code § 17200.

69.    Defendants' unlawful business practices have directly resulted in economic harm to Google, including the costs of Google's investigation into those practices and the impact on

1    Google's credibility, goodwill, and user experience.

2         70.     Absent an injunction prohibiting these unlawful business practices, Defendants are

3    likely to continue posting fake reviews in violation of FTC regulations and the UCL, including by

4    creating or using new and different Google accounts to evade Google's attempts to detect and

5    prohibit Defendants' fake reviews. Google faces irreparable harm from the ongoing impact of such

6    fake reviews on Google's credibility, goodwill, and user experience.

7            **COUNT IV: INDUCEMENT OF CONTRACTUAL BREACH BY REVIEWERS**

8         71.     Google realleges and incorporates by reference all preceding paragraphs as if fully

9    set forth herein.

10        72.     To the extent Defendants, including without limitation some or all of the Doe

11   Defendants, induce others to post fake content on Google, Defendants induced such individuals to

12   breach a valid contract with Google.

13        73.     Individuals who posted content on Google on the instruction of Defendants entered

14   into binding and enforceable contracts with Google by expressly agreeing to Google's TOS, as set

15   forth above.

16        74.     Google is informed and believes, and on that basis alleges, that at all relevant times,

17   Defendants knew that only users who had agreed to the TOS and signed into their Google accounts

18   could post reviews on Google, and thus that binding and enforceable contracts existed between

19   Google and the individuals they enlisted to post fake reviews on Google.

20        75.     Google is informed and believes, and on that basis alleges, that Defendants

21   intentionally induced and enabled these third parties to create fake reviews on Google Maps, as set

22   forth above, for Defendants' own monetary gain.

23        76.     Google is informed and believes, and on that basis alleges, that these individuals

24   breached their contractual obligations under the TOS in a number of ways, including by posting on

25   Google Maps deliberately fake content that was not based on real experiences as a result of

26   Defendants' inducement.

27        77.     Google is informed and believes, and on that basis alleges, that at all relevant times,

28   Defendants knew that the TOS prohibited posting fake content on Google, and thus that violation

of the TOS was a necessary consequence of their inducing these individuals to create fake reviews on Google Maps, as set forth above.

78.    As set forth above, as a result of these individuals' breaches of the TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate those breaches and by undermining users' confidence and trust in Google services including Google Maps and local listings on Google.

## COUNT V: INDUCEMENT OF CONTRACTUAL BREACH BY BUSINESSES

79.    Google realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80.    To the extent Defendants, including without limitation some or all of the Doe Defendants, induced business owners who use Google Business Profiles to purchase fake reviews for their businesses, Defendants induced such businesses to breach a valid contract with Google.

81.    Businesses with active Google Business Profiles entered into binding and enforceable contracts with Google by expressly agreeing to Google's TOS and Google Business Profile TOS, as set forth above.

82.    To the extent those businesses with active Google Business Profiles purchased fake reviews from Defendants, those Defendants violated Google's TOS and Google Business Profile TOS.

83.    Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that businesses who had claimed their Business Profile had agreed to Google's TOS and Google Business Profile TOS, and thus that binding and enforceable contracts existed between Google and the business.

84.    Google is informed and believes, and on that basis alleges, that Defendants intentionally induced and enabled these businesses to violate the TOS and Google Business Profile TOS for Defendants' own monetary gain.

85.    Google is informed and believes, and on that basis alleges, that at all relevant times, Defendants knew that the TOS and Google Business Profile TOS prohibited posting fake content on Google, and thus that violation of the TOS was a necessary consequence of their actions.

86.    As set forth above, as a result of these individuals' breaches of the TOS and Google Business Profile TOS, Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur expenses to investigate those breaches and by undermining users' confidence and trust in Google services including Google Maps, Google Business Profiles, and local listings on Google.

## PRAYER FOR RELIEF

WHEREFORE, Google respectfully requests the following relief:

A.    That Defendants are adjudged to have breached Google's TOS;

B.    That Defendants are adjudged to have induced various other Google users to breach Google's TOS and Google Business Profile TOS;

C.    That Defendants are adjudged to have engaged in unlawful business acts or practices in violation of California's Unfair Competition Law;

D.    That Defendants be permanently enjoined from creating or causing to be created fake Business Profiles and from posting or causing to be posted on any Google service fake reviews not based on a user's actual experience of the associated business's goods or services;

E.    That Google be awarded damages in an amount sufficient to compensate it for damages caused by Defendants' acts;

F.    That Google be awarded pre-judgment and post-judgment interest; and

G.    That Google be granted such further relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a jury trial of all issues so triable.

COOLEY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  March 19, 2025

**COOLEY LLP**
WHITTY SOMVICHIAN (194463)
REECE TREVOR (316685)
JINYOUNG LEE (359885)


By: */s/ Whitty Somvichian*
　　　Whitty Somvichian

Attorneys for Plaintiff
GOOGLE LLC