1  MAURICE D. PESSAH (SBN: 275955)
2  maurice@pessahgroup.com
   LILIBET M. BEHDADNIA (SBN: 337356)
3  lbehdadnia@pessahgroup.com
4  **PESSAH LAW GROUP, PC**
   9100 Wilshire Blvd., Suite 850E
5  Beverly Hills, CA 90212
6  Tel: (310) 772-2261

7  Attorneys for Defendant,
8  YANIV ASAYAG

9            **UNITED STATES DISTRICT COURT**
10           **NORTHERN DISTRICT OF CALIFORNIA**
11              **SAN JOSE DIVISION**

| | |
|---|---|
| GOOGLE, LLC, a Delaware limited liability company, | Case No: 5:25-cv-02642-SVK |
| | *[Assigned to Hon. Susan van Keulen, Courtroom 6]* |
| Plaintiff, | |
| v. | **DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(1) AND FRCP 12(b)(2), OR IN THE ALTERNATIVE, DISMISS ALL CLAIMS PURSUANT TO FRCP RULE 12(b)(6)** |
| YANIV ASAYAG, an individual; and DOES 1-20, | |
| Defendants. | |
| | *[Filed concurrently with [Proposed] Order]* |

Response Deadline: June 11, 2025
Hearing Date: July 29, 2025
Time: 10:00 a.m.

Complaint Filed: March 19, 2025
Trial Date: None Set

---

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION.................................................................1

STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED..................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.......................................1

I.      INTRODUCTION .................................................................................1

II.     RELEVANT BACKGROUND AND PROCEDURAL HISTORY.............2

III.    LEGAL STANDARD............................................................................3

     A.    Subject Matter Jurisdiction ......................................................... 3

          1.    Diversity Jurisdiction..................................................4

     B.    Personal Jurisdiction pursuant to 12(b)(2)....................................4

     C.    Motion to Dismiss Under Rule 12(b)(6).......................................6

IV.     ARGUMENT.......................................................................................7

     A. The Complaint Should be Dismissed Under Rule 12(b)(1)......................7

          1.    Google Lacks Standing………………………………..…….7

          2.    The Complaint Should Be Dismissed Because Plaintiff Has Failed to Plead Amount in Controversy Greater Than $75,000………………………………………………………..9

     B. The Complaint Should be Dismissed for Lack of Personal Jurisdiction………………………………………………………..10

     C.  The Complaint Fails To Allege Any Alter Ego Liability………………11

     D. The Complaint Fails to State Any Cause Of Action Against Defendant...........................................................................................12

          1.    The Complaint Fails to State Any Claim for Breach of Contract (Counts I & II)………………………………………………12

               a.    Failure To Demonstrate Acceptance Of The Terms Of Service Or Business Profile Terms Of Service Alleged In Counts I & II…………………………………………..13

               b.    Google Fails to Identify Any Specific Breached Contract Provision in the Terms of Service………………..……..14

               c.    Policies Are Not Enforceable Contractual Terms……....17

               d.    Google's Damages are Speculative……………………..19

i

2.    Google Fails to State a Cal. Bus. & Prof. Code § 17200 Claim……………………………………………………………….20

3.    Inducement Claims are Vague and Conclusory (Counts V & VI)……………………………………………………………….22

4.    The UCL and Inducement Claims Should Be Dismissed Because The Economic Loss Rule Bars Recovery, And No Exception Applies……………………………………………………22

E.    CONCLUSION………………………………………………………...24

1

# <u>TABLE OF AUTHORITIES</u>

2

**<u>Page(s)</u>**

3

## <u>Cases</u>

4
5
*Action Embroidery Corp. v. Atlanta Embroidery, Inc.*,
  368 F.3d 1174 (9th Cir. 2004)……………………………………………….5

6
7
*All Cities Realty, Inc. v. Hollymax Realty, Inc.*,
  2010 WL 11523916 (C.D. Cal. Jan. 21, 2010)……………………………..12

8
9
*Andersen v. Stability AI Ltd.*,
  2023 WL 7132064 (N.D. Cal. Oct. 30, 2023)………………………...……15

10
11
*Appling v. Wachovia Mortg., FSB*,
  745 F. Supp. 2d 961 (N.D. Cal. 2010)………………………………..……13

12
13
*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006)……………………………………………………...….3

14
15
*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ………………………..…………………..……..6

16
17
*AT&T v. Compagnie Bruxelles Lambert*,
  94 F.3d 586 (9th Cir. 1996) ……...………………………………………5

18
19
*Balistreri v. Pacifica Police Dept.*,
  901 F.2d 696 (9th Cir. 1988) ………………………………..……………6

20
21
*Barnes v. Yahoo! Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ………………………………………...…17

22
23
*Beecher v. Google N. Am. Inc.*,
  2018 WL 4904914 (N.D. Cal. Oct. 9, 2018)………....……...…………..15

24
25
*Be In, Inc. v. Google Inc.*,
  2013 WL 5568706 (N.D. Cal. Oct. 9, 2013)……………………………..11

26
27
*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)…………………………………………………..…..6

28
*Berman v. Freedom Financial Network, LLC*,

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

30 F.4th 849 (9th Cir. 2022)……………………………………....13, 14

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016)……………………………………15

*Caruth v. International Psychoanalytical Ass'n*,
    59 F.3d 126 (9th Cir. 1995)……………………………………………….5

*Caterpillar Inc. v. Lewis*,
    519 U.S. 61 (1996)………………………………………………………..4

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)………………………………………………………8

*CollegeSource, Inc. v. AcademyOne*, Inc.,
    653 F.3d 1066 (9th Cir. 2011)……………………………………………5

*Coronavirus Rptr. v. Apple, Inc.*,
    85 F.4th 948 (9th Cir. 2023) ……………………………………....13, 16

*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986)……………………………………………..5

*Demetriades v. Yelp, Inc.*,
    228 Cal. App. 4th 294 (2014)………………………………………....21

*Dole Food, Co.. V. Watts*,
    303 F.3d 1104 (9th Cir. 2002)……………………………………………4

*Ebeid v. Facebook, Inc.*,
    2019 WL 2059662 (N.D. Cal. May 9, 2019) …………………………15, 17

*Gen. Emples. Trust Fund & Bd. of Trustees of Gen. Emples. Trust Fund v. Am. Empire Bldg. Corp..,*
    2015 US Dist LEXIS 97743, [ND Cal July 27, 2015, No. 14-cv-04054 NC])……………………………………………………………….....12

*Frysinger v. Mitchell*,
    2022 U.S. Dist. LEXIS 198436 (D. Haw. Nov. 1, 2022)………………....9

*Hall v. Time, Inc.*,
    158 Cal.App.4th 847 (2008)………………………………………..21

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd*.,
    328 F.3d 1122 (9th Cir. 2003)…………………………………......…..5

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)……………………………….…………….………4

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016)………………………….....…15

*In re Google Location History Litigation*,
    514 F.Supp.3d 1147 (N.D. Cal. 2021)………………………………..18

*Int'l Shoe Co. v. State of Washington*,
    326 U.S. 310 (1945)……………………………………………....…..5

*Int'l Union of Operating Eng'rs v. Cnty. of Plumas*,
    559 F.3d 1041 (9th Cir. 2009)……………………………………….3

*Johnson v. Columbia Props. Anchorage, LP*,
    437 F.3d 894 (9th Cir. 2006)……………………………………….…..4

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994)………………………………………………….3

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (2011)…………………………………………….20, 21

*Lacano Invs., LLC v. Balash*,
    765 F.3d 1068 (9th Cir. 2014)…………………………………….9

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)……………………………………………....…7

*MacRae v. HCR Manor Care Services*,
    2014 WL 12588464 (C.D. Cal. Oct. 30, 2014)……………………..……11

*Mayron v. Google LLC*,
    54 Cal.App.5th 566 (2020)………………………………………….21

*Menken v. Emm*,
    503 F.3d 1050 (9th Cir. 2007)……………………………….………4

*Meyer v. Uber Techs., Inc.*,

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

868 F.3d 66 (2d Cir. 2017)……………………………………..……13

*Milliken v. Meyer*,
    311 U.S. 457 (1940)……………………………………………….5

*Miron v. Hermalife Int'l, Inc. .*,
    11 F. App'x. 927 (9th Cir.2001)…………………………………..15, 16

*MH Pillars Ltd. v. Realini*,
    2017 WL 916414 (N.D. Cal. Mar. 8, 2017)………………………..12

*Morton v. Twitter, Inc.*,
    2021 U.S. Dist. LEXIS 66897 (C.D. Cal. Feb. 19. 2021)……………...…..16

*Murphy v. Twitter, Inc.*,
    60 Cal. App. 5th 12 (2021)……………………………………..…17, 20

*Navarro v. Block*,
    250 F.3d 729 (9th Cir. 2001)………………………………………...6

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014)……………………………………...10

*Oracle USA, Inc. v. XL Global Services, Inc.*,
    2009 WL 2084154 (N.D. Cal. July 13, 2009)……………………...……23

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998)………………………………………5

*Prager University v. Google LLC*,
    85 Cal.App.5th 1022 (2022)………………………………..………21

*Rich Products Corp. v. Kemutec, Inc.*,
    66 F.Supp.2d 937 (E.D.Wis.1999)………………………………….23

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002)………………………………………4

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004)……………………………………………...22

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999)………………………………………………3

*Russell v. Union Oil Co.*,
    7 Cal.App.3d 110 (1970)……………………………………………………...13

*Rockefeller Tech. Invs. (Asia) VII v. Changzhou SinoType Tech. Co.*,
    9 Cal. 5th 125 (2020)…………………………………………………….....11

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004)……………………………………….....4, 5

*Seismic Reservoir 2020, Inc. v. Paulsson*,
    785 F.3d 330 (9th Cir. 2015)……………………………………………...6

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990)……………………………………………4

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)………………………………………………………7

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011)………………………………………….....21, 22

*Terenkian v. Republic of Iraq*,
    694 F.3d 1122 (9th Cir. 2012)……………………………………………6

*United States v. Cotton*,
    535 U.S. 625 (2002)………………………………………………………3

*US Ecology, Inc. v. State of California*,
    129 Cal. App. 4th 887 (2005)…………………………………………19

*Wash. Env't Council v. Bellon*,
    732 F.3d 1131 (9th Cir. 2013)……………………………………………7

*Wash. v. U.S. FDA*,
    108 F.4th 1163 (9th Cir. 2024)……………………………………………8

*Young v. Facebook, Inc.*,
    2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ..…………………………15

*Ziegler v. Indian River County*,
    64 F.3d 470 (9th Cir. 1995) ……………………………………………5

**Statutes & Rules**

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

Fed. R. Civ. P. 12(b)(1)………………...………………………………1-3, 6-7, 24

Fed. R. Civ. P. 12(b)(2)…………………………………………………1-2, 4, 11, 24

Fed. R. Civ. P. 12(b)(6)……………………………………………....1-2, 6, 24

28 U.S.C. § 1332…………………………………………………………4, 10

Cal. Bus. & Prof. Code § 17200………………………………………...3, 20-21

Cal. Civ. Proc. § 367………………………………………………....21

Cal. Civ. Proc. § 410.10………………………………………………...5

Fed. R. Civ. P. 12(h)(3)………………………………………………....4

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT on July 29, 2025, at 10:00 a.m. or at such time thereafter as the matter may be heard, Defendant Yaniv Asayag will and hereby moves the before the United States Courthouse for the Northern District of California, 280 South First Street, San Jose, California 95113, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), Rule 12(b)(2), and in the alternative, pursuant to Rule 12(b)(6) for an order dismissing Plaintiff Google, LLC's Complaint (ECF No. 1 or "Compl.").

## STATEMENT OF REQUESTED RELIEF AND ISSUES TO BE DECIDED

Defendant respectfully asks the Court to dismiss the Complaint in its entirety for failure to plead subject matter jurisdiction and personal jurisdiction. In the alternative, Defendant asks the Court to dismiss, for failure to state a claim upon which relief can be granted for all claims pursuant to Rule 12(b)(6). Moreover, Plaintiff's complaint fails to plead alter ego liability and the economic loss rule bars the requested relief under Counts III, IV and V and therefore no legally cognizable claim can be plead under Rule 12(b)(6).

This Motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities; the pleadings and papers filed in this action; and such further argument and matters as may be offered at the time of the hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.        INTRODUCTION

Plaintiff Google LLC's ("Plaintiff" or "Google") Complaint against Defendant Yaniv Asayag ("Asayag" or "Defendant") fails at the threshold, as a matter of law. Plaintiff's Complaint asserts breach of contract, unlawful business

practices and inducement claims stemming from alleged "fake content that was not based on real experiences." (Compl. ¶ 59).

Google's claims should be dismissed for three independent reasons: (1) the Court lacks subject matter jurisdiction because the Complaint fails to establish Article III standing and an amount in controversy above $75,000; (2) this Court lack personal jurisdiction, as Google does not plead that Defendant agreed to its Terms of Service, entered or committed the acts complained of within the State of California, or directed any conduct to the State of California; and (3) the Complaint fails to state any claim for which relief may be granted. Dismissal is thereby warranted under Rules 12(b)(1), 12(b)(2), and 12(b)(6).

## II.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A.    Background

Defendant Yaniv Asayag is a Maryland resident who, according to the Complaint, operates local service-oriented businesses, Eagle Locksmith and Eagle Services LLC, both based in Beltsville, Maryland. (Complaint ¶ 9, ECF No. 1). Google is a "well-known provider of an Internet Search Engine and other online services." (Compl. ¶15) Its Maps Service alone has "over **one billion** users." (Compl. ¶15)(emphasis added).

The Complaint alleges that Mr. Asayag engaged in the creation or manipulation of Google Business Profiles (Compl. ¶¶ 24–32), posted or procured the posting of user reviews through Google Maps (Compl. ¶¶ 33–41), and thereby breached Google's Terms of Service and Business Profile Terms (Compl. ¶¶ 42–55). Google asserts jurisdiction and venue based on two key grounds: (1) a forum-selection clause allegedly contained in Google's Terms of Service; and (2) harm experienced in California due to reputational and self-inflicted business-related expenses (Compl. ¶¶ 11–14).

The Complaint additionally alleges, that "[w]hen a user signs up for a Google account—a prerequisite for posting reviews on Google Maps—he or she must

expressly agree to the Google Terms of Service ("TOS"). (Compl. ¶ 43).  Google's jurisdictional theory rests on the allegations that "[b]ecause Defendants' business involves posting reviews on Google and elsewhere, it follows that they must be aware that a user account is required to do so or to administer a Business Profile, and that one must accept the TOS to create such an account." (Compl. ¶ 51).

### B.    Procedural History

On March 19, 2025, Plaintiff filed the instant complaint against Defendant and DOES 1-20 asserting five causes of action: (I) breach of contract (fake reviews), (II) breach of contract (lead generation scheme), (III) Violation of Cal. Bus. & Prof. Code section 17200, et seq., (IV) inducement of contractual breach by reviewers, and (V) inducement of contractual breach by business. (ECF No. 1).

On April 3, 2025, the parties filed a stipulation to extend Defendant's response deadline to Plaintiff's Complaint to May 12, 2025. (¶ No. 10). On May 1, 2025, counsel for Defendant and Plaintiff participated in a telephone discussion about the case. (Pessah Decl. ¶ 2). This Motion follows.

### III.    **LEGAL STANDARD**

### A.    **Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. *Id.* Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived. *United States v. Cotton*, 535 U.S. 625, 630 (2002). Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); *see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas*, 559 F.3d 1041, 1043-44 (9th Cir. 2009). Lack of subject matter jurisdiction may also be raised by the district court sua sponte. *Ruhrgas AG v. Marathon Oil Co.*,

526 U.S. 574, 583 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Id.*; *see* Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action on its own motion if lacking subject matter jurisdiction).

### 1. Diversity Jurisdiction

An action may be brought in federal court where diversity jurisdiction exists. The basis of diversity jurisdiction is found in Title 28 U.S.C. § 1332. Diversity jurisdiction exists when there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 28 U.S.C. § 1332(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The burden of establishing that diversity jurisdiction exists rests on the party asserting it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010). "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

### B.    Personal Jurisdiction Pursuant To 12(b)(2)

A motion to dismiss for lack of personal jurisdiction is governed by Fed. R. Civ. P. 12(b)(2), and a district court's determination whether to exercise personal jurisdiction is a question of law. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). *See also Dole Food, Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). "[T]he plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). A "prima facie" showing means that the plaintiff has produced admissible evidence which, if believed, would be sufficient to

4

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

establish the existence of personal jurisdiction. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003); *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Uncontroverted allegations in the plaintiff's complaint must be taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996). Although the plaintiff cannot simply rest on the bare allegations of the complaint, conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800.

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies. *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's longarm statute, Cal. Civ. Proc. Code § 410.10, "is coextensive with federal due process requirements, [so] the jurisdictional analyses under state law and federal due process are the same." *Schwarzenegger*, 374 F.3d at 800-01. Federal due process requires that a nonresident defendant have "certain minimum contacts" with the forum state of such a nature that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343 (1940)). This constitutional test may be satisfied by showing that (1) the defendant has "substantial" or "continuous and systematic" contacts with the forum state – i.e. "general jurisdiction," or (2) there is a strong relationship between the defendant's forum contacts and the cause of action – i.e. "specific jurisdiction." *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 839 (9th Cir. 1986). *See also Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Personal jurisdiction must be present for "each claim asserted against a defendant." *Action Embroidery Corp. v. Atlanta Embroidery, Inc.*, 368 F.3d 1174, 1180-81 (9th Cir.

2004). However, a court may "assert pendent personal jurisdiction over a defendant with respect to a claim . . . so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." *Id.* at 1180.

### C.    Motion to Dismiss Under Rule 12(b)(6)

On Rule 12(b)(6) motions, claims are subject to dismissal based on a dispositive legal issue, *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015), or for failure to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1939 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). *Twombly* and *Iqbal* apply with equal force to Rule 12(b)(1) motions challenging the existence of Article III standing on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a claim. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). In *Ashcroft v. Iqbal*, the Supreme Court elaborated on the standard for evaluating pleadings in conjunction with a motion to dismiss filed pursuant to Rule 12(b)(6). 129 S. Ct. 1937, 1949-50 (2009) (*internal citations omitted*). The Supreme Court suggested a three-step process for courts to apply in considering a motion to dismiss. First, the Court must identify the elements of the cause of action in light of interpreting case authority. *Id.* at 1947. Second, the Court should begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 1949-50. Third, the Court must consider any remaining factual allegations to "determine whether they plausibly give rise to an entitlement of relief." *Id.* at 1950.

///

## IV.        ARGUMENT

### A.        The Complaint Should be Dismissed Under Rule 12(b)(1)

#### 1.        <u>Google Lacks Standing</u>

Article III standing "consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." See *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

"To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical. *Spokeo, Inc.,* 578 U.S. at 339. (internal citations omitted). "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Id.* (internal citations omitted). "An injury in fact must also be concrete." *Id.* (internal citations omitted). Furthermore, "[t]he line of causation between the defendant's action and the plaintiff's harm must be more than attenuated." *Wash. Env't Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013) (citation omitted) ("Bellon").

Here, Google's alleged injury—harm to its "credibility" and the resources spent to investigate purported misconduct—is nothing less than speculative and fails to establish standing. (Compl. ¶¶ 6, 55, 69). In fact, Google fails to actually identify the particular harm allegedly suffered at the hands of Defendant. Rather, Google contends that, of its over **one billion** users of its Maps service, Defendant singlehandedly "undermined Google's credibility," and "undermin[ed] users' confidence and trust in Google services." (Compl. ¶¶ 15, 55, 60). The harm and damages alleged by Google in its Complaint are speculative at best, as no allegation of particular harm is made, nor is any such harm traceable particularly to Defendant. Applying the *Spokeo* court's holding, the Complaint fails to sufficiently allege any particular, concrete, and redressable injury, and is therefore subject to dismissal.

1    The Complaint also fails to meet standard set by the court in *Bellon*, as it
2    asserts conclusively that potential customers were driven away from Google,
3    without alleging how this occurred as a direct result of Defendant's conduct. For
4    example, Google fails to describe any instance in which a customer ceased using
5    Google's services due to Defendant's alleged conduct. Rather, Google only alleges
6    speculative and uncertain harm to its credibility, as some ethereal effect of the act
7    of Defendant - one person in over a billion users. This is because Google knows,
8    full well, as any reasonable person does, that its self-described billion-plus users
9    cannot and do not read all content posted on its expansive platform, nor would a
10   material number of users be swayed from using the platform by what another user
11   may have posted. Google's only other possible damages are its costs of maintaining
12   its colossal platform –a necessary overhead expenditure for the technology giant,
13   not damages resulting from Defendant's alleged conduct. Therefore, Google simply
14   cannot, and, indeed, fails to, establish any concrete connection between Defendant's
15   alleged conduct and a corresponding loss of business to Google, or any other
16   damages. *See Wash. v. U.S. FDA*, 108 F.4th 1163, 1175 (9th Cir. 2024) ("[P]laintiffs
17   attempting to show causation generally cannot rely on speculation about the
18   unfettered choices made by independent actors not before the courts." (quotation
19   marks and citation omitted)); *Bellon*, 732 F.3d at 1141-42 ("A causal chain does not
20   fail simply because it has several links, provided those links are not hypothetical or
21   tenuous and remain plausible." (quotation marks and citation omitted)).

22   Moreover, Courts routinely hold that self-inflicted expenditures made to
23   address alleged third-party conduct, such as those incurred by Google in ordinarily
24   operating its platform, do not satisfy the injury-in-fact requirement. *See*, *Clapper v.*
25   *Amnesty Int'l USA*, 568 U.S. 398, 418 (2013) ["[R]espondents' self-inflicted injuries
26   are not fairly traceable to the Government's purported activities under § 1881a, and
27   their subjective fear of surveillance does not give rise to standing."] Google does
28   not allege that it lost users, revenue, or experienced any measurable harm directly

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

1    traceable to Defendant's alleged conduct. Accordingly, the Complaint should be
2    dismissed for Google's failure to establish standing to sue.

3            2.    **The Complaint Should Be Dismissed Because Plaintiff Has**
4                  **Failed to Plead Amount in Controversy Greater Than**
                  **$75,000**
5
         Plaintiff has failed to plead diversity jurisdiction. Plaintiff's allegation that "the
6
    amount in controversy exceeds the sum of $75,000.00, exclusive of interests and
7
    costs," is wholly unsupported by specific factual allegations and rests on
8
    speculation and legal conclusions. (Compl. ¶ 11). Plaintiff asserts this figure is
9
    based on "Google's expenses incurred to investigate Defendants' fraudulent
10
    conduct, breaches of contract, violations of the FTC regulations and the UCL, and
11
    to remedy users' confidence and trust in Google services." (Compl. ¶ 11). However,
12
    this generalized assertion fails to establish, with any degree of specificity, the nature
13
    or amount of the alleged damages.
14
         "When a complaint includes legal conclusions, they are not accepted as true
15
    even if cast **in the form of factual** allegations." *Frysinger v. Mitchell*, No. 22-00049
16
    SOM-RT, 2022 U.S. Dist. LEXIS 198436, at *3 (D. Haw. Nov. 1, 2022) *quoting*
17
    *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014) (original
18
    emphasis) (internal citations omitted). Here, the Complaint offers no concrete
19
    figures or factual elaboration concerning the scope or cost of the alleged
20
    investigative activities. It does not clarify whether these alleged costs pertain solely
21
    to the investigation of Defendant Asayag or extend to others, nor does it specify
22
    whether such "expenses" represent discrete outlays or simply reflect internal labor
23
    costs or salaried employee time—costs that are generally not compensable.
24
         Moreover, Plaintiff's claims for damages arising from "violations of the FTC
25
    regulations and the UCL" are, again, legal conclusions devoid of supporting facts.
26
    (Compl. ¶ 11). The purported damage to "remedy users' confidence and trust" is
27
    even more speculative. (Compl. ¶ 11).  Google routinely manages user concerns
28

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

1    and complaints as part of its day-to-day business operations. (Compl. ¶ 54), and as
2    Google concedes, it has over one billion users for its Maps service alone. (Compl.
3    ¶15). Plaintiff offers no precedent or example of a specific incident in which it
4    expended measurable sums for such remedial efforts as a result of conduct similar
5    to that alleged here. Because Plaintiff fails to provide factual allegations that
6    plausibly demonstrate the amount in controversy exceeds the jurisdictional
7    threshold under 28 U.S.C. § 1332, the Complaint must be dismissed for failure to
8    adequately plead diversity jurisdiction.

9    ### B.    The Complaint Should be Dismissed for Lack of Personal Jurisdiction

11        The Complaint alleges that Defendant is a Maryland resident with "two
12   business based in Maryland and registered with the Secretary of State in Maryland."
13   (Compl ¶ 9). The Complaint fails to allege any physical presence or purposeful
14   availment in California. Google rests its entire jurisdictional theory on Defendant's
15   supposed acceptance of its online Terms of Service. (Compl. ¶ 12).   Yet it fails to
16   allege when, how, or even whether Defendant actually explicitly agreed to the
17   operative versions of Google's Terms of Service. The Complaint's reliance on a
18   forum-selection clause embedded in Google's Terms of Service is unavailing
19   because it fails to allege that Defendant actually agreed to those terms. (*Id.*; Compl.
20   ¶ 51). "Mutual manifestation of assent, whether by written or spoken word or by
21   conduct, is the touchstone of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d
22   1171, 1175 (9th Cir. 2014). Courts uniformly reject such attempts to bootstrap
23   jurisdiction without pleading clear, affirmative acts of consent. *Id.* at 1177
24   ("Whether a user has inquiry notice of a browsewrap agreement, in turn, depends
25   on the design and content of the website and the agreement's webpage. Where the
26   link to a website's terms of use is buried at the bottom of the page or tucked away
27   in obscure corners of the website where users are unlikely to see it, courts have

28

DEFENDANT YANIV ASAYAG'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION

refused to enforce the browsewrap agreement.") (internal citations omitted); *See, e.g. Be In, Inc. v. Google Inc.*, No. 12–CV–03373–LHK, 2013 WL 5568706, at *9 (N.D. Cal. Oct. 9, 2013) ("The SAC does not allege the size or typeface of the link, the perhaps central or obvious location of the link on the page, or even the text of the link, but merely alleges the existence of such a link. Because browsewrap agreements, where enforceable, are a powerful means of binding users with very little affirmative assent, a complaint must state facts establishing the means by which the link in question would give notice to a reasonably prudent internet user.")

Without well-pleaded factual allegations demonstrating that Defendant knowingly and affirmatively agreed to the relevant terms, personal jurisdiction cannot be premised on consent. Absent valid consent or minimum contacts with California, this Court lacks personal jurisdiction. Accordingly, the Complaint should also be dismissed under Rule 12(b)(2). Without a showing of actual or constructive consent, this Court lacks personal jurisdiction. *See Rockefeller Tech. Invs. (Asia) VII v. Changzhou SinoType Tech. Co.,* 9 Cal. 5th 125, 140 (2020). Accordingly, the complaint should be dismissed for lack of personal jurisdiction.

## C.    The Complaint Fails To Allege Any Alter Ego Liability

Plaintiff's Complaint is devoid of any alter ego allegations and fails to recite the bare bones elements of alter ego liability. *MacRae v. HCR Manor Care Services*, No. SACV 14-0715, 2014 WL 12588464 *7-8 (C.D. Cal. Oct. 30, 2014) (granting motion to dismiss officer-defendants where allegations in complaint insufficient to pierce corporate veil).

Here, Google's claims against Mr. Asayag all fail because it has not alleged any facts to show why Mr. Asayag is individually liable under an alter ego theory. For example, Google alleges that Defendant "cause[d] fake reviews to be posted to their fraudulent Business Profiles." (Compl. ¶ 33). However, as Google concedes, Defendant operates numerous businesses, including "Eagle Services LLC."

(Compl., ¶ 9). Google further concedes that "[a]ny **business** can sign up for a Business Profile, a Google service that offers it a suite of tools to manage the business's local listing on Google." (Compl. ¶ 16)(emphasis added).  Defendant is an individual, not a business or business profile. (Compl. ¶ 9).  The Complaint fails to allege that Defendant explicitly accepted the terms of the service. (*See* Compl. ¶¶ 9, 35).

This sort of boilerplate pleading does not establish alter ego liability and is insufficient to survive a Rule 12 motion. Even if Plaintiff recited the general elements of alter ego liability, it is still insufficient. *See*, e.g., *MH Pillars Ltd. v. Realini*, No. 15-CV-1383-PJH, 2017 WL 916414, at *14 (N.D. Cal. Mar. 8, 2017) (dismissing complaint that "contain[ed] primarily conclusory allegations that merely recite the factors considered by courts when evaluating alter ego claims"); *Gen. Emples. Trust Fund & Bd. of Trustees of Gen. Emples. Trust Fund v Am. Empire Bldg. Corp.*, 2015 US Dist LEXIS 97743, at *9-10 [ND Cal July 27, 2015, No. 14-cv-04054 NC]) (dismissing "alter ego" claim premised on a "formulaic recitation of the elements of alter ego liability," pled "on information and belief" "without any further factual allegations"); *All Cities Realty, Inc. v. Hollymax Realty, Inc.*, No. SA CV 08-195 AHS (MLGx), 2010 WL 11523916, at *2 (C.D. Cal. Jan. 21, 2010) (dismissing with prejudice complaint that "simply list[ed] the elements typically evaluated in determining alter ego liability" but did not "allege the facts supporting each," despite an opportunity to amend) (quotations and alteration omitted). Accordingly, the Complaint as to Defendant should be dismissed.

## D.    The Complaint Fails to State Any Cause of Action Against Defendant.

### 1.    The Complaint Fails to State Any Claim for Breach of Contract (Counts I & II)

"To state a breach of contract claim under California law, plaintiffs must show: (1) there was a contract, (2) plaintiff either performed the contract or has an

12

excuse for nonperformance, (3) defendant breached the contract, and (4) plaintiff suffered damages as a result of defendant's breach." *Coronavirus Rptr. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023); *see also Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 974 (N.D. Cal. 2010).

### a. *Failure To Demonstrate Acceptance of The Terms Of Service Or Business Profile Terms of Service Alleged In Counts I & II*

Google's breach of contract claims are fundamentally flawed. The Complaint fails to allege Defendant assented to any terms of service or had any actual notice of terms of service. Google's Complaint fails this foundational requirement. Google's reliance on terms hyperlinked or buried in policies without actual notice is insufficient to establish contract formation. To form a contract under California law, "the parties must manifest their mutual assent to the terms of the agreement." *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "Acceptance of an offer, which may be manifested by conduct as well as by words, must be expressed or communicated by the offeree to the offeror." *Russell v. Union Oil Co.*, 7 Cal.App.3d 110, 114 (1970). The allegations fall far short of establishing the basic elements of contract formation under well-settled law governing online agreements.

In the digital context, these principles are applied through a well-established framework. Courts distinguish between clickwrap agreements—where users affirmatively indicate agreement by clicking a checkbox after being presented with terms—and browsewrap agreements—where terms are passively buried behind hyperlinks without requiring express agreement. Courts have routinely enforced clickwrap agreements where the user's affirmative act manifests clear consent. *See Berman*, 30 F.4th at 855–56; *see also Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017).

But browsewrap agreements are treated with far more skepticism. Courts are

"reluctant to enforce browsewrap agreements because consumers are frequently left unaware that contractual terms were even offered." *Berman*, 30 F.4th at 856.

As the Ninth Circuit reaffirmed in *Berman*, unless a website operator can show actual knowledge, contract formation requires both: (1) "reasonably conspicuous notice" of the terms, and (2) an "unambiguous manifest[ation]" of assent to those terms. *Berman*, 30 F.4th at 856.

Here, Google alleges only in conclusory fashion that Defendant "expressly agreed to Google's TOS." (Compl. ¶ 57). But nowhere does the Complaint allege that Defendant clicked a button, checked a box, or took any other action that would constitute a clear manifestation of assent to the terms of service or the Google Business Profile terms of service. Instead, Google appears to rely on mere hyperlinks or references to various policies—including multiple versions of Terms of Service and the Maps Policy—without identifying which version Defendant purportedly agreed to, when any such agreement occurred, or how assent was allegedly manifested.

The Complaint is silent as to whether the terms were ever presented to Defendant in a reasonably conspicuous manner, or whether he was aware of their existence at all. This failure is particularly glaring given that Google asserts breaches under multiple contracts—the general Terms of Service and the Google Business Profile Terms—yet fails to allege how or when either was accepted. Such omissions render the breach of contract claims in Counts I and II entirely speculative.

There are no allegations linking Asayag to the acts of acceptance of any terms, further undermining Google's theory of contract liability.

### b.    *Google Fails to Identify Any Specific Breached Contract Provision in the Terms of Service*

Although Google alleges that Defendant breached two different sets of terms of service—the general Terms of Service and those for Google Business Profiles—

it never identifies which specific contractual provision was allegedly violated in the terms of service. Plaintiff must identify the contracts and "allege the specific provisions" breached. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 978 (N.D. Cal. 2016); *see also, e.g.*, *Beecher v. Google N. Am. Inc.*, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018). Simply referencing a policy via a hyperlink within a dropdown menu on a webpage—and then hyperlinking that page within the terms of service—is insufficient. *See Andersen v. Stability AI Ltd.*, 2023 WL 7132064, at *16 (N.D. Cal. Oct. 30, 2023) (dismissing breach of contract claim for failure to identify the "exact provisions in the TOS they contend [defendant] breached and facts in support of breach of each identified provision").

"In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached*." Young v. Facebook, Inc.*, No. 5:10-CV-03579-JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010) *referencing Miron v. Hermalife Int'l, Inc.*, 11 F. App'x. 927, 929 (9th Cir. 2001); *see also Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017) (internal citations omitted) (unpublished); *Ebeid v. Facebook, Inc.*, 18-CV-07030-PJH, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing complaint for failure to identify the contract and provision within the contract allegedly breached by Facebook).

Here, there is no allegation of what provision was breached in the terms of service, how it was breached, or when Defendant purportedly agreed to that provision. This alone warrants dismissal. Compounding these deficiencies, the Complaint also fails to allege that Defendant Asayag was the individual operating the relevant accounts alleged to have posted the reviews at issue.

Additionally, Google fails to specify which version of its terms of service Defendant allegedly accepted, offering no factual allegations regarding when, where, or how any contract was formed. Nor does Google identify the specific

provisions that Defendant purportedly breached in the terms of service. Instead, the Complaint selectively quotes from the Maps User-Generated Content Policy, which states that user contributions must be based on "real experiences and information" and prohibits "[d]eliberately fake content." (Compl. ¶ 47). These are not contractual provisions. Quoting from Google's Maps Policy—a separate, hyperlinked policy— is insufficient. The breach of contract claims are based on Google's Terms of Service, yet the Complaint fails to reference any provision of the Terms of Service itself that were breached.

A complaint that does not identify the specific provision of an agreement that was breached cannot survive a motion to dismiss. *Coronavirus Rptr. v. Apple, Inc.*, 85 F.4th 948, 957 (9th Cir. 2023) (holding that plaintiffs failed to plead a claim for breach of contract under California law; plaintiffs "do not identify relevant provisions of the [contract], much less show that [defendant] breached a specific provision"); *Miron v. Herbalife Int'l, Inc.*, 11 F. App'x 927, 929 (9th Cir. 2001) ("The district court's dismissal of the [plaintiffs'] breach of contract claims was proper because the [plaintiffs] failed to allege any provision of the contract which supports their claim."); *see also Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMx, 2021 U.S. Dist. LEXIS 66897, at *12-13 (C.D. Cal. Feb. 19, 2021) (noting that plaintiff failed to "point[] to any contractual provisions, such as in Twitter's terms of service, that imposed a duty on Twitter to suspend offending accounts"; acknowledging plaintiff's citation to "two of Twitter's content-moderation policies, including the 'Non-consensual nudity policy[,]' [b]ut there is nothing to indicate that they are binding, as opposed to merely aspirational statements").

Here, Google references general concerns about fake reviews and fake listings, but provides no factual allegations tying these concerns to an actual contractual term or clause that's been explicitly, or implicitly, accepted by Defendant. Such vague assertions do not meet the requisite pleading standard. Accordingly, Counts I and II should be dismissed.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### c. Policies Are Not Enforceable Contractual Terms

Even if Google could plausibly point to a provision in the Terms of Service that were accepted by Defendant, it improperly relies on non-contractual documents—like the Maps User-Generated Content Policy—to allege breach. The Complaint cites excerpts from Google's Maps User-Generated Content Policy and other content standards. Google's map policies are not contract terms unless explicitly incorporated into the Terms of Service and affirmatively accepted by the Defendant.

Courts routinely dismiss breach of contract claims where plaintiffs point to general policies or content standards without tying them to specific, enforceable promises. *See, e.g. Ebeid v. Facebook, Inc.*, 2019 WL 2059662, at *7 (N.D. Cal. May 9, 2019) (dismissing breach of contract claim because plaintiff failed to identify specific provision of the contract breached by defendant); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 29-30 (2021) (dismissing breach of contract claim based on § 230(c)(1) because plaintiff was simply attacking "Twitter's interpretation and enforcement of its own general policies rather than breach of a specific promise"; plaintiff did not identify any "specific representation of fact or promise by Twitter to Murphy . . . beyond general statements in its monitoring policy").

Google attempts to convert policies (e.g., Maps User-Generated Content Policy) into binding obligations, but these are not contractual unless affirmatively accepted, and there has been no demonstration of such by Defendant. See *Barnes v. Yahoo! Inc.*, 570 F.3d 1096, 1108 (9th Cir. 2009) (stating that, under contract law, a "promise must 'be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration'"; "[t]hus a general monitoring policy, or even an attempt to help a particular person, on the part of an interactive computer service

such as Yahoo does not suffice for contract liability"). As previously noted, there is no contract alleged that is purportedly accepted by Defendant.

For example, in, *In re Google Location History Litigation*, a provision cited to by plaintiffs in Google's terms of service did not "actually bind Google to offer any particular privacy settings, but rather, merely explains to users where they can go to adjust their settings." 514 F.Supp.3d 1147, 1160 (N.D. Cal. 2021). The court in *Google Location History Litigation* cite to *Facebook, Inc. Internet Tracking Litigation*, 956 F.3d at 610–11, cites another example where the Northern District "dismiss[ed] breach-of-contract claim premised on Facebook's alleged violation of its Data Use Policy after concluding the policy 'merely provides information—not commitments—regarding Facebook's use of information and how users can control that information')." *In re Google Location History Litigation,* 514 F.Supp.3d 1147, 1160 (N.D. Cal. 2021).

Here, Google points to provisions in a "Maps User-Generated Policy." (Compl. ¶¶ 46-47). Google contends that the Maps User-Generated Policy is incorporated by reference because the Terms of Service include a hyperlink to "service-specific additional terms," which purportedly apply to individual Google services, including Maps, and reference policies such as the "Maps User-Generated Content Policy." (Compl. ¶ 46).

However, following the hyperlink leads only to a general landing page listing Google's various products. To access the relevant policy, a user must navigate through multiple dropdown menus and nested links—making the Maps User-Generated Content Policy neither readily accessible nor expressly incorporated by reference. A policy buried within such a complex series of links cannot reasonably be deemed part of the contract. Yet this very policy forms the sole basis of the alleged breaches.

Moreover, Google fails to identify which version of the policy governs Defendant's conduct, when that version became effective, or how many times the

policy has been revised. Critically, Google does not cite any specific provision of the Terms of Service that actually incorporates the Maps User-Generated Content Policy by reference—nor does it allege when, or even whether, Defendant Asayag agreed to the policy or the operative terms in the first place.

Although Google cites certain sections of the Google Business Profile Terms of Service, it offers only the conclusory assertion that "[a]ny Google Business Profile user who breaches the TOS by violating the Maps User-Generated Content Policy therefore necessarily breaches the Google Business Profile TOS." (Compl. ¶ 50). This allegation is legally insufficient. Google fails to identify any specific provision of the Terms of Service that Defendant purportedly violated—because no such provision exists. Rather, Google's claims are entirely predicated on the Maps User-Generated Content Policy, which is neither incorporated by reference nor alleged to be an independently enforceable contract. As such, it cannot form the basis for a breach of the Google Business Profile Terms of Service.

### d.    *Google's Damages are Speculative*

Google's damages theory fails to meet the threshold for contract or tort recovery, as it is predicated on abstract reputational harm rather than specific, measurable injury. The Complaint offers no concrete factual allegations establishing a direct, non-speculative loss caused by Defendant's alleged conduct. Additionally, Google's damages allegations are speculative, relying on abstract reputational harm rather than specific, compensable injuries.

It is well established that " 'Causation of damages in contract cases, as in tort cases, requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain.' A proximate cause of loss or damage is something that is a substantial factor in bringing about that loss or damage." *US Ecology, Inc. v. State of California*, 129 Cal. App. 4th 887, 909

(2005). Google must identify a proximate cause that was a substantial factor in producing actual harm—not theoretical injury.

Here, Google offers only vague assertions of injury to its "credibility," "goodwill," and user trust—without quantifying any financial impact or connecting such harm to Defendant in a specific, causally direct way. (*See* Compl. ¶¶ 6, 23, 55, 69-70). The Complaint does not explain whether the supposed reputational damage is attributable specifically to Defendant, or whether it arises from broader, routine brand protection efforts. As Google concedes, its Google Maps service has over a billion users alone, and "Google benefits from maintaining a helpful and credible platform." (Compl. ¶¶ 15, 22). It also remains entirely unclear what Google's reputational damage that stems from the alleged conduct of Defendant Asayag when Google's Maps Service alone has over a billion users. These speculative damages theory is legally insufficient and cannot support a claim for relief.

### 2.    <u>Google Fails to State a Cal. Bus. & Prof. Code § 17200 Claim</u>

Google alleges that Defendant's actions violated California's unfair competition law ("UCL") by contravening FTC guidelines. Google's UCL claim under Cal. Bus. & Prof. Code § 17200 fails because: (1) it pleads no actual loss of money or property and fails to meet the causation and injury standards established in *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); and is not the proper plaintiff to enforce FTC regulations, and (2) fails to identify any California consumer that was misled or harmed as the UCL does not operate extraterritorially.

*First*, Google has failed to allege UCL statutory standing. Google has not demonstrated that they suffered any actual injury. *See Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 39 (2021) ("UCL claim fails for lack of standing because [Plaintiff] does not allege a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*.) (internal quotations omitted). Google lacks standing under the UCL because it fails to allege "lost money or

property" resulting from Defendant's conduct. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). "Every action must be prosecuted by the real party in interest. (§ 367.)" C.C.P. § 367; *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 305 (2014); "It is not enough that a plaintiff lost money; to have standing, there must be a causal link between the unlawful practice and the loss." *Mayron v. Google LLC,* 54 Cal.App.5th 566, 574 (2020); *see also Prager University v. Google LLC*, 85 Cal.App.5th 1022, 1041 (2022) ("Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition."); *Hall v. Time, Inc.*, 158 Cal.App.4th 847, 849 (2008) ("We hold the phrase 'as a result of' in the [unfair competition law] imposes a causation requirement; that is, the alleged unfair competition must have caused the plaintiff to lose money or property.")

Here, Google would not be the real party in interest, as its lost no money or property and has suffered no injuries.  Moreover, Google is not a proper plaintiff to enforce FTC regulations.

*Second*, the Complaint fails to identify any California consumer that was misled or harmed. The UCL is designed to protect California residents and businesses, not global platforms headquartered in the state. See *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011).

"Neither the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially. Accordingly, the presumption against extraterritoriality applies to the UCL in full force." *Id.* In *Sullivan,* the court noted that "[t]he California Supreme Court held: 'Business and Professions Code section 17200 does not apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs in the circumstances of this case based solely on the employer's failure to comply with the overtime provisions of the FLSA.'" *Id.* at 1271.

Here, Google alleges that Defendant, a Maryland resident, engaged in the creation or modification of business profiles and associated reviews on Google services, primarily involving businesses located in the Washington, D.C. metropolitan area. (*See* Compl. ¶ 28). Like in *Sullivan*, here the UCL does not operate extraterritorially and there are no facts alleged here that demonstrate any harm to California consumers or businesses. Accordingly, the UCL claim should be dismissed with prejudice.

### 3.     Inducement Claims are Vague and Conclusory (Counts V & VI)

Google alleges that Defendant induced third parties to breach contracts with Google, but fails to identify any specific third party or breach. These allegations lack the specificity required to sustain any tortious interference or inducement theory. Next, because Google has not pled a valid underlying contract, there can be no derivative liability for inducement. Finally, as discussed herein, the alleged harm is identical to those of the contract claims. Accordingly, Counts IV and V should be dismissed with prejudice.

### 4.     The UCL and Inducement Claims Should Be Dismissed Because The Economic Loss Rule Bars Recovery, And No Exception Applies

Even if pled with particularity, the tort claims (Count III, IV and V) are barred under California's economic loss rule, which prohibits tort claims that duplicate contractual breaches. *See Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

Google seeks damages arising solely from alleged violations of contractual obligations—not independent tortious conduct. "The fundamental rule in California is that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an

agreement." *Oracle USA, Inc. v. XL Global Services, Inc.*, No. C 09–00537, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009). The economic loss rule serves a valuable purpose to " 'prevent[] the law of contract and the law of tort from dissolving one into the other.' " *Id*. (quoting *Rich Products Corp. v. Kemutec, Inc.*, 66 F.Supp.2d 937, 969 (E.D.Wis.1999)).   Limited exceptions include physical injury resulting from breach of duty, wrongful discharge of employee in violation of public policy, or a contract is fraudulently induced. *Id*. Nowhere does Plaintiff allege any harm to person or property, or wrongful discharge in violation of public policy.

Here, Google seeks damages arising solely from alleged violations of contractual obligations—not independent tortious conduct. Plaintiff replicates the same allegations of economic damage in its breach of contract claims (Count I & II) as in its intentional inducement claims. In Google's contract claims, Google alleges the the harms to be that: "Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google *to incur expenses to investigate* and remedy **Defendants' breach** and *by undermining users' confidence and trust in Google services* including Google Maps and Google Business Profiles." (Compl. ¶¶ 60, 65) (emphasis added). Then in the Google's UCL claim (Count III), Google alleges that the alleged breached "ha[s] directly resulted in economic harm to Google, including the costs of *Google's investigation* into those practices and the *impact on Google's credibility, goodwill, and user experience*." (Compl. ¶¶ 69) (emphasis added). Then, in Google's inducement claims (Count IV), Google alleges the identical harm of the contract claims, specifically that "Defendants have caused Google to be damaged in an amount to be determined at trial, including by forcing Google to incur *expenses to investigate* those breaches and by *undermining users' confidence and trust* in Google services including Google Maps and local listings on Google." (Compl. ¶¶ 78) (emphasis added). In the final inducement claim (Count V), Google alleges the harm to be:

"including by forcing Google to incur **expenses to investigate** those breaches and by **undermining users' confidence and trust** in Google services including Google Maps, Google Business Profiles, and local listings on Google." (Compl. ¶ 86) (emphasis added).

The alleged harms asserted across all counts are identical: that Google purportedly incurred expenses to "investigate" the alleged breaches and that such breaches allegedly "undermined users' confidence and trust in Google." The California economic loss rule therefore bars Counts III, IV and V and it is thus suitable for dismissal, with prejudice, under Rule 12(b)(6) as legally insufficient to state a claim for relief from this Court.

### E.    CONCLUSION

For the reasons set forth above, Defendant Asayag respectfully requests that the Court grant his Motion to Dismiss Plaintiff's Complaint in its entirety without leave to amend pursuant 12(b)(1) (lack of subject matter jurisdiction), 12(b)(2) (lack of personal jurisdiction) and Federal Rules of Civil Procedure 12(b)(6) (failure to state a claim).

Dated: June 11, 2025                    **PESSAH LAW GROUP, PC**

                                        By: *Lilibet Behdadnia*

                                        Maurice D. Pessah
                                        Lilibet M. Behdadnia
                                        Attorneys for Defendant
                                        YANIV ASAYAG